## COMMONWEALTH vs. OEUN LAM.

Essex. March 8, 1995. - June 19, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, & GREANEY, JJ.

*Escape. Evidence*, Flight, Consciousness of guilt, State of mind. *Practice, Criminal*, Capital case.

At a murder trial the judge properly admitted evidence of the defendant's escape from pretrial custody on the issue of consciousness of guilt. [617-619]

At a murder trial, there was no substantial risk of a miscarriage of justice in the judge's failure to give an instruction on consciousness of innocence. [619-620]

No reason appeared on the record of a first degree murder trial for this court to exercise its power under G. L. c. 278, § 33E, to grant a new trial or to reduce the verdict to murder in the second degree. [620-621]

INDICTMENTS found and returned in the Superior Court Department on August 8, 1991.

The cases were tried before *Margot Botsford*, J.

*Nona E. Walker*, Committee for Public Counsel Services, for the defendant.

*Susanne Levsen*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant appeals from his convictions of murder in the first degree by reason of felony-murder, armed assault in a dwelling, and two counts of armed robbery. The defendant asserts that his convictions should be reversed because the judge improperly (1) admitted evidence of his attempted escape as consciousness of guilt, and (2) failed to instruct the jury on consciousness of innocence. The defendant also asks us to exercise our power under G. L. c. 278, § 33E (1992 ed.), and reduce the murder conviction to murder in the second degree. We affirm the judgments. We de-

cline to exercise our power under G. L. c. 278, § 33E, in favor of the defendant to order a new trial or to enter a lesser degree of guilt.

1. *Facts.* We set forth the facts which the jury could have found. In the early morning of February 3, 1991, Saraya Sim took Kun Vorn and two of her children home from visiting Vorn's sister. Vorn noticed an automobile following them. When the four of them reached Vorn's apartment house, Vorn took the children inside. Sim and two occupants of the automobile which had been following them, one of whom was the defendant, also went inside the apartment house.

Sim left to buy some food. After Sim left, the two men pointed guns at Vorn and told her to go upstairs. When Vorn and the men reached the second floor, the men put on masks and hats and told Vorn to knock on the door of the apartment being occupied by the Nhor family. At the time, Soth Nhor, his wife Cheang Lei, and their six children, including son Viseth (known as Seth) and daughter Savy, were in the apartment.

When Vorn knocked on the door, Seth asked who it was. Seth recognized Vorn's voice. Seth turned on the light and unlocked the door. The door was forced open, revealing Vorn and the two masked men.[1] Both men had guns, one of which was pointed at Vorn's back.

One man pointed his gun at Seth's head and told him to sit down and not look at them. One of the intruders ripped a phone cord out of the wall and used it to tie Nhor's hands behind his back. While the defendant tried to open a suitcase, the other intruder entered the room in which Nhor's daughters were sleeping. The intruder pointed his gun at Nhor's daughter, Savy, pulled her hair and took her jewelry. Savy said, "Don't touch me." Nhor, afraid that his daughter might be raped, untied his hands and attacked one of the intruders, the defendant. During the struggle, the defendant's

---

[1]The second intruder was identified as Vann Long. See *Commonwealth* v. *Vann Long*, 419 Mass. 798 (1995).

mask came off and Nhor saw his face. The other intruder came out of the daughters' room and joined the fight, as did Savy's brother, Seth. During the struggle, Nhor observed a tatoo on one of the intruders' hands. One of the intruders fired his gun.[2] The bullet passed through Nhor's neck and struck Nhor's wife between the eyes. The intruders fled. Nhor survived; his wife later died.

Vorn and Nhor separately identified the defendant's photograph from an array of fourteen pictures.[3] Nhor identified the defendant at a lineup[4] and at trial. He also identified a photograph of the tattoo on the defendant's hand, and identified the defendant's hand with the tattoo at trial. The theory of the defense was misidentification.

2. *Evidence of attempted escape.* The judge denied the defendant's motion in limine to exclude evidence of his attempt to escape from custody. At trial, a correctional officer of the Essex County sheriff's department testified that, on November 4, 1992, the defendant, while being transported to Superior Court in Salem, escaped, but was quickly apprehended. The defendant argues that it was an abuse of discretion to admit this testimony.[5]

Evidence of escape or attempted escape is admissible to prove consciousness of guilt. See *Commonwealth* v. *Roberts,* 407 Mass. 731, 735 (1990); *Commonwealth* v. *Sawyer,* 389 Mass. 686, 701-702 (1983); *Commonwealth* v. *Connors,* 18

---

[2]It is unclear which intruder fired the gun.

[3]Vorn, an immunized witness, did not identify the defendant at the lineup and did not identify the defendant at trial.

[4]At the lineup, Nhor indicated he thought the defendant was one of the intruders, but said he was unsure and wanted to look at the photograph. An audiotape of the lineup was played for the jury and the transcript was distributed to the jury.

[5]The defendant did not object to the evidence at trial. A motion in limine "alone is insufficient to save appellate rights." *Commonwealth* v. *Gabbidon,* 398 Mass. 1, 7 (1986). Ordinarily, we review such errors to determine whether there is a substantial likelihood of a miscarriage of justice. See G. L. c. 278, § 33E. Obviously, if there were no error, there can be no substantial likelihood of a miscarriage of justice. Thus, we do not also analyze this issue under that standard.

Mass. App. Ct. 285, 290 (1984). "[C]onsciousness of guilt, together with other evidence, may establish guilt." *Commonwealth* v. *Epsom*, 399 Mass. 254, 259 (1987), citing *Commonwealth* v. *Porter*, 384 Mass. 647, 653 (1981). See *Commonwealth* v. *Booker*, 386 Mass. 466, 470 (1982) ("While proof of mere consciousness of guilt alone may be insufficient to convict of crime, . . . evidence of such a state of mind when coupled with other probable inferences, may be sufficient to amass the quantum of proof necessary to prove guilt" [citations omitted]). "The relevancy of evidence of [escape] is within the discretion of the trial judge and his finding will not be disturbed unless it is palpably unreasonable." *Commonwealth* v. *Jackson*, 391 Mass. 749, 758 (1984). See *Booker, supra* at 469-470, and cases cited.

The defendant argues that the escape was too distant in time to have any probity regarding his consciousness of guilt. The robbery and murder occurred on February 3, 1991; the escape attempt did not occur until November 2, 1992. There was no error.

An attempted escape need not be contemporaneous with the crime or arrest to be probative of consciousness of guilt. See *Sawyer, supra* at 700-702; *Connors, supra* at 290-291. The defendant's trial was scheduled to commence within days of his attempted escape. Evidence of escape shortly before a defendant's trial is scheduled to commence is admissible, even though the escape occurs several years after the underlying offense. *Sawyer, supra* at 700-702. See *Connors, supra* at 291. "An incarcerated defendant, unlike a person at liberty, is not free to absent himself from his environs whenever he chooses. As a result, the exact timing of a prison break cannot become the dispositive factor in evaluating the relevance of flight." *Id.* at 290.

The defendant requested instructions[6] on the evaluation of consciousness of guilt evidence. The judge instructed in ac-

---

[6]In *Commonwealth* v. *Simmons*, 419 Mass. 426, 436 (1995), we said that, in the absence of a request, whether to instruct the jury on consciousness of guilt evidence "is left to the sound discretion of the judge."

cordance with *Commonwealth* v. *Toney*, 385 Mass. 575, 585-586 n.6 (1982). The defendant correctly did not object to the instructions on consciousness of guilt. There was no error.

3. *Consciousness of innocence instruction.* There was evidence that the defendant was present when police searched his home pursuant to a search warrant. He voluntarily went to the police station shortly after the search. At the police station, the defendant was accused of being involved in the robbery and shooting. He denied being involved in the crimes and, shortly thereafter, he went home. Approximately six hours later, the police went to the defendant's home to arrest him. The defendant was sleeping. In his closing argument, defense counsel emphasized this evidence as showing the defendant's innocent state of mind. The defendant did not request an instruction on consciousness of innocence and the judge did not give one. The defendant did not object to lack of such an instruction. We consider whether the lack of such an instruction created a substantial likelihood of a miscarriage of justice. See G. L. c. 278, § 33E.

The defendant argues that, while a judge is ordinarily not required to give an instruction on consciousness of innocence, it was error not to do so in light of the evidence and instruction on consciousness of guilt. The defendant argues that this error gave the jurors an improperly one-sided picture of the governing law, elevating consciousness of guilt evidence above any inference of consciousness of innocence. There was no error.

Consciousness of innocence is a subject properly left to the give and take of argument, without jury instructions. *Commonwealth* v. *Knap*, 412 Mass. 712, 716-717 (1992) (where instructions on consciousness of guilt were "balanced and in accord with the principles enunciated in" *Toney*, *supra* at 575, "consciousness of innocence was a matter more appropriately left to the defendant's closing argument"). *Commonwealth* v. *Kozec*, 21 Mass. App. Ct. 355, 366 (1985) ("The judge did not abuse his discretion when he gave the jury essentially correct 'consciousness of guilt' instructions but refused to give them 'consciousness of innocence' instruc-

tions"), *S.C.*, 399 Mass. 514 (1987). *Commonwealth* v. *Martin*, 19 Mass. App. Ct. 117, 122-123 (1984).

This treatment reflects the difficulties inherent in consciousness of innocence evidence. See *Martin, supra* at 122. Such evidence is of little value because there are many reasons why a guilty person might refrain from flight. *Id.,* quoting *People* v. *Montgomery*, 53 Cal. 576, 577-578 (1879). For example, the defendant may have chosen not to flee because he did not believe the police had enough evidence to implicate him in the crimes. When such evidence is admissible, instructions are still improper because, while the evidence "gives the jury a look at the complete picture . . . instruction of the jury may divert their attention from more central issues by an unnecessary attempt at explaining what has been described as 'extraordinarily complex action, potentially prompted by a variety of motives other than guilt [or innocence] of the actual crime.' " *Martin, supra* at 123, quoting *Austin* v. *United States*, 414 F.2d 1155, 1157 (D.C. Cir. 1969).[7]

4. *G. L. c. 278, § 33E*. The defendant asks us to reduce the murder conviction to murder in the second degree pursuant to G. L. c. 278, § 33E. The Commonwealth presented sufficient evidence of the defendant's participation in the robbery and shooting to support his conviction of murder in the first degree. The defendant's argument that there was only a single gunshot fired in panic in the course of a melee with a victim is unpersuasive. The melee was the foreseeable result of an armed robbery in the victims' home. Cf. *Commonwealth* v. *Williams*, 364 Mass. 145, 152 (1973) (reducing verdict where defendants "intended to steal surreptitiously,

---

[7]We add that, in our review pursuant to G. L. c. 278, § 33E, consciousness of guilt was not a major part of the Commonwealth's case. It was neither mentioned nor alluded to in the prosecutor's opening statement or closing argument. Other evidence provided a sufficient basis on which to find the defendant guilty. The defendant was not arrested or charged for any other crime from which his consciousness of guilt may have stemmed. The defendant countered consciousness of guilt evidence with evidence of his failure to flee between the crime and his arrest, even though he knew that he was a suspect.

not by violence, as in a robbery[, and] reacted with violence only when they were discovered in the act of the theft, which the deceased tried violently to thwart"). We also reject the argument that we should reduce the verdict because the defendant was only eighteen years old at the time of the shooting. While age can be a factor in our review, see *Commonwealth* v. *McDermott*, 393 Mass. 451, 460 (1984), the circumstances of a killing in a home do not warrant reduction of the verdict.

We have considered the entire case on the law and the evidence, see G. L. c. 278, § 33E, and conclude that the interests of justice do not require a new trial or entry of a verdict of a lesser degree of guilt.

*Judgments affirmed.*