Opinion
 

 BOREN, P. J.
 

 Appellant Lawrence Williams was convicted by a jury of second degree burglary of a vehicle (Pen. Code, § 459), and admitted a prior 1994 robbery conviction (Pen. Code, §§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)). He was sentenced to a total prison term of six years. We affirm.
 

 
 *650
 
 Facts
 

 On the morning of October 7, 1995, Dinh Van Tran parked his 1989 Toyota Corolla in its assigned space inside the parking garage of his apartment complex. Tran locked the car and went up to his apartment. Later that morning, Gardena Police Officer Dwayne Taylor was on patrol in his marked police car when he went to Tran’s apartment complex in response to a call. Officer Taylor parked his patrol car outside the parking garage, which was closed and required for entry a remote control gate opener.
 

 When Officer Taylor walked to the pedestrian gate of the garage, he observed appellant sitting in the front passenger seat of a gold Toyota parked inside the garage. Appellant reached into the glove compartment, removed some papers, and sifted through them. The officer then yelled at appellant to open the gate. Appellant walked over to the gate and opened it for the officer, who asked appellant whose car he had been sitting inside. Appellant replied that he did not know. Officer Taylor detained appellant, searched him, and found in his pants pocket two screwdrivers and an object resembling an ice pick.
 

 Police promptly determined that the car in which appellant had been sitting was registered to Tran. Tran then arrived and identified his car. Both of the front doors of Tran’s car were open, and he had not given appellant permission to enter the vehicle. Nothing was missing from the inside of the car, though papers from the glove compartment were strewn about the inside of the car. By the passenger side door lock was a scratch and a hole, which had not been there when Tran parked his car earlier that morning. The hole was approximately the size of a pencil. In Officer Taylor’s opinion, Tran’s car had been “punched,” a common technique used by thieves who punch a hole adjacent to the door lock to insert a small tool and then defeat the locking mechanism.
 

 Parked next to Tran’s vehicle was an older model Monte Carlo with the driver’s side door slightly ajar. The gas cap had been removed and wedged between the license plate and the body of the Monte Carlo so that the license plate faced downward toward the ground. Officer Taylor searched the Monte Carlo and found four screwdrivers in the glove compartment. All but one of the screwdrivers matched the handles of the screwdrivers Officer Taylor had found in appellant’s pocket. Officer Taylor relayed the license number of the Monte Carlo to the police dispatcher to determine through Department of Motor Vehicle records the owner of the vehicle. Appellant then spontaneously stated the Monte Carlo belonged to him.
 

 At trial, appellant presented no evidence in his defense.
 

 
 *651
 
 Discussion
 

 I.
 
 No Sua Sponte Duty to Instruct the Jury on the Absence of Flight
 

 Contrary to appellant’s contention, he was not denied due process and equal protection by the trial court’s failure to instruct sua sponte on the absence of flight.
 
 [1]
 
 It was uncontested at trial that appellant did not try to flee when the arresting officer approached him. Indeed, in response to the officer’s request, appellant opened the gate to the garage area to let the officer in. Appellant observes that, when there is evidence of a defendant’s flight, such evidence may be considered in deciding guilt or innocence and an instruction (see CALJIC No. 2.52) must be given sua sponte, pursuant to Penal Code section 1127c.
 
 [2]
 
 Appellant thus reasons that a sense of balance and reciprocal parity (see, e.g.,
 
 Wardius
 
 v.
 
 Oregon
 
 (1973) 412 U.S. 470 [93 S.Ct. 2208, 37 L.Ed.2d 82] [due process requires reciprocal discovery rights for both prosecution and defense]) constitutionally require an instruction on the
 
 absence
 
 of flight. He is mistaken.
 

 Our Supreme Court held in
 
 People
 
 v.
 
 Green
 
 (1980) 27 Cal.3d 1, 36-39 [164 Cal.Rptr. 1, 609 P.2d 468], that there is no right to an instruction on the absence of flight.
 
 Green
 
 explained that the absence of flight can give rise to several inferences unrelated to a defendant’s alleged innocent state of mind. For example, in the present case, appellant’s absence of flight and his opening of the gate as asked constituted mere compliance with a lawful police request. Since it is reasonable to expect that all persons, whether guilty or innocent, will cooperate with a lawful police request, no compelling inference of innocence arises from such cooperation. It is also reasonable to conclude that appellant, despite his guilt, was literally fenced in and had little choice but to cooperate with the officer. Moreover, even assuming
 
 *652
 
 the absence of flight may be relevant to some extent, it is often, as here, “so laden with conflicting interpretations, that its probative value on the issue of innocence is slight.”
 
 {Id.
 
 at p. 39.)
 

 As appellant notes,
 
 Green
 
 did not address the constitutional claim now raised which focuses on the lack of parity with the requirement of a flight instruction when supported by the evidence. (See
 
 People
 
 v.
 
 Dillon
 
 (1983) 34 Cal.3d 441, 473-474 [194 Cal.Rptr. 390, 668 P.2d 697] [cases are not authority for propositions not considered].) However, the analysis in
 
 Green
 
 is instructive. The absence of flight is of such marginal relevance that such evidence is often not even admissible.
 
 People
 
 v.
 
 Montgomery
 
 (1879) 53 Cal. 576, discussed in
 
 Green,
 
 upheld the trial court’s preclusion of evidence that a suspect while confined in jail awaiting trial had the opportunity to escape but declined to do so. The
 
 Montgomery
 
 court “held in effect that evidence that a suspect did
 
 not
 
 flee when he had the chance was of little value as tending to prove innocence because there are plausible reasons why a guilty person might also refrain from flight.”
 
 (People
 
 v.
 
 Green, supra,
 
 27 Cal.3d at p. 37, original italics.)
 

 On the other hand, the same cannot be said when a suspect flees the scene of a crime or flees after being accused of a crime. Although flight may also be subject to arguably innocent interpretation in certain contexts, and CALJIC No. 2.52 permits the jury to accord it appropriate weight under the circumstances, flight is significantly different than the absence of flight. Flight is by its nature an active, conscious activity which readily and logically tends to support the inference of consciousness of guilt, as described in CALJIC No. 2.52. Indeed, the inference of consciousness of guilt from flight is one of the simplest, most compelling and universal in human experience. (2 Wigmore, Evidence (Chadboum ed. 1979) § 276, pp. 122-128.) The absence of flight, on the other hand, is far less relevant, more inherently ambiguous and “often feigned and artificial.”
 
 (Id.,
 
 § 293 at p. 230.)
 

 Nonetheless, we do not intend to proscribe the broad discretion of the trial court in giving an appropriate instruction on the absence of flight when supported by the evidence and of sufficient relevance in the context of the case. However, we decline the invitation to hold as a matter of law that due process, pursuant to the reasoning in
 
 Wardius
 
 v.
 
 Oregon, supra,
 
 412 U.S. 470, requires such an instruction.
 
 Wardius,
 
 mandating reciprocal discovery rights, was premised on the notion that “[I]t is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State.”
 
 {Id.
 
 at p. 476 [93 S.Ct. at pp. 2212-2213].)
 

 
 *653
 
 In contrast to the notion of reciprocal discovery rights, there is no fundamental unfairness in not requiring an instruction on the absence of flight. As previously discussed, unlike the flight of an accused from the scene of a crime or after accusation of a crime, the absence of flight presents such marginal relevance it is usually not even admissible. (See
 
 People
 
 v.
 
 Green, supra,
 
 27 Cal.3d at p. 37.) Since flight and the absence of flight are not on similar logical or legal footings, the due process notions of fairness and parity in
 
 Wardius
 
 are inapplicable.
 

 Accordingly, failure to give sua sponte an instruction on the absence of flight was not error.
 

 II.-IV.
 
 *
 

 Disposition
 

 The judgment is affirmed.
 

 Fukuto, J., and Zebrowski, J., concurred.
 

 A petition for a rehearing was denied June 23, 1997, and appellant’s petition for review by the Supreme Court was denied September 24, 1997.
 

 [1]
 

 Appellant suggests that an instruction such as the following should have been given sua sponte: “The absence of flight of a person immediately after the commission of a crime, or after he is accused of a crime, although the person had the opportunity to take flight, is a fact which may be considered by you in light of all other proven facts, in deciding whether or not the defendant’s guilt has been proven beyond a reasonable doubt. The weight to which such circumstances is entitled is a matter for the jury to determine.”
 

 [2]
 

 “Penal Code section 1127c requires that whenever evidence of flight is relied on to show guilt, the court must instruct the jury that while flight is not sufficient to establish guilt, it is a fact which, if proved, the jury may consider. This statute was enacted to abolish the common law rule that the jury could not be instructed on flight unless there was evidence defendant knew he had been accused.”
 
 (People
 
 v.
 
 Pensinger
 
 (1991) 52 Cal.3d 1210, 1243 [278 Cal.Rptr. 640, 805 P.2d 899].)
 

 CALJIC No. 2.52, regarding flight after the crime, provides as follows: “The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding whether a defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide.”
 

 *
 

 See footnote,
 
 ante,
 
 page 648.