Filed 7/7/16  P. v. Dark CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B262272 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA063648) |
| v. | |
| CHARLES ANTHONY DARK, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Murphy, Commissioner.  Affirmed.

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, and Idan Ivri, Deputy Attorney General, for Plaintiff and Respondent.

————————————

On January 14, 2015, a jury convicted Charles Anthony Dark (Dark) of failing to register as a sex offender (Pen. Code, § 290, subd. (b)),[1] procuring and offering a false or forged instrument (§ 115, subd. (a)), and failing to provide information and provision of false information (§ 290.018, subd. (j)).  On appeal, Dark advances two principal arguments.  First, he contends that the evidence was insufficient to support his conviction for procuring and offering a false or forged instrument.  Second, he argues that the trial court committed reversible error by instructing the jury with CALCRIM No. 362, a consciousness-of-guilt instruction.  We disagree with both contentions and, accordingly, affirm the judgment.

## BACKGROUND

A. *DARK'S FAILINGS WITH REGARD TO HIS SEX OFFENDER OBLIGATIONS*

In 1993, when Dark was 32 years old, a jury convicted him of forcibly raping a 15-year-old girl while he was armed with a weapon.  As a result of this conviction, California law required Dark to register with local law enforcement, providing, among other things, an accurate local address; in addition, Dark was required to update his address annually and, if he moved to a new local address, to update that information within five business days of changing his address.

From approximately August 2006 to June 2011, Dark lived in apartment number 1 in an apartment building on East Avenue Q-3, in the City of Palmdale (the apartment number 1 address).  Karen Drager, who did not know or recognize Dark, testified at trial that she had been living at the apartment number 1 address since February 2013.

On November 9, 2012, and again on November 8, 2013, Dark signed an annual sex offender registration form with the Los Angeles County Sheriff's Department in Palmdale.  The four-page form is divided into two parts, each consisting of two pages. The first part provides substantive information about the registering sex offender (e.g.,

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

name, date of birth, driver's license number, address, phone number, etc.). The second part contains a list of 20 separate duties and obligations of a sex offender (e.g., to provide and update local addresses); next to each duty or obligation is a place for the sex offender to provide his initials. In addition, the sex offender must sign and date each of the form's four pages.

A civilian law enforcement employee typed the substantive information onto Dark's 2012 and 2013 forms. The address listed on each form was the apartment number 1 address. After reviewing the forms, Dark signed each page of both forms and placed his initials next to each duty and/or obligation. The information on the signed forms was then entered into a database, the California Arson and Sex Registry or CASR.

In July 2014, a Los Angeles Sheriff's deputy assigned to the Palmdale station, Deputy Denise McCormick (McCormick), attempted to verify Dark's address. At first, McCormick attempted to find Dark at the apartment number 1 address. On July 10, 2014, McCormick, unable to find Dark at the residence listed on his 2013 form, called the phone number Dark had listed in his file and left a message for Dark with the woman who answered. On July 16, 2014, McCormick subsequently received a call back from Dark. When McCormick asked Dark where he was living, he claimed to still be residing at the address that he had listed on the registration forms in 2012 and 2013—that is, the apartment number 1 address. When McCormick told him that she had visited that address and had been unable to find him there, Dark admitted that he had moved from that location several months earlier. Dark advised McCormick that, at that time, he was currently living in a car parked on Larson Avenue and occasionally also stayed in a motel when he could afford it.[2]

---

[2] As explained on his 2012 and 2013 registration forms, once Dark became homeless, he was required to (a) register in person with the sheriff department as a transient within five business days of becoming a transient and (b) update his registration in person every 30 days.

B.     *DARK'S TRIAL AND CONVICTION*

On January 14, 2015, a third amended information alleged that Dark committed one count of failure to register as a sex offender (§ 290, subd. (b); count 2), one count of procuring and offering a false or forged instrument—the 2013 registration statement (§ 115, subd. (a); count 3), and one count of failure to provide information and provision of false information—the 2013 registration statement (§ 290.018, subd. (j); count 4). The information further alleged that Dark had suffered four prior strikes pursuant to the "Three Strikes" law. (§§ 667, subds. (b)-(j), 1170.12, subds. (b).) Dark pleaded not guilty to all charges and denied the special allegations.

On January 14, 2015, after deliberating for less than a day, the jury found Dark guilty as charged as to the substantive charges and also found true the special allegations regarding his prior strikes. The court denied probation but granted the defense motion to dismiss three of Dark's four prior strikes for purposes of sentencing, finding that a life sentence would be "disproportionate" to the crimes committed and noting that, given Dark's age (55 years old), there was a relatively low risk of recidivism. The court then sentenced Dark to the middle term of two years in prison on count 2, which was doubled to four years as a second strike offense pursuant to the Three Strikes law. The court sentenced Dark to the middle term of two years on count 3, which was doubled to four years pursuant to the Three Strikes law, but stayed the sentence pursuant to section 654. The court sentenced appellant to one year on count 4, but also stayed that sentence pursuant to section 654.

## DISCUSSION

A.     *SUBSTANTIAL EVIDENCE SUPPORTED THE PROCURING AND OFFERING A FALSE OR FORGED INSTRUMENT CONVICTION*

Dark argues that "the evidence was insufficient to support [his] conviction . . . because he did not knowingly procure or offer a false or forged instrument to be filed, registered or recorded . . . ." We disagree.

1.     *Standard of review*

4

"'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence and to special circumstance allegations. [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.'" (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)

As we explain below, Dark's claim regarding his conviction on the procuring or offering a false or forged instrument charge lacks merit.

2. *The People presented substantial evidence in support of the procuring or offering a false or forged instrument charge*

The evidence shows that Dark signed and submitted his 2013 registration form knowing that it was inaccurate. It was undisputed that Dark moved out of the apartment number 1 address in June 2011. It was also undisputed that Karen Drager moved into that very same apartment in February 2013. Based on these facts alone, a rational juror could reasonably find that Dark knowingly offered a false registration statement in November 2013. In addition, Dark lied to a police investigator about his address—when asked by McCormick in July 2014 whether he lived at the apartment number 1 address, Dark initially and falsely affirmed that he did in fact live there, even though he had moved out three years earlier. In light of this evidence, Dark's signature on each page of the 2013 registration statement and his initials next to each duty and obligation on that same form strongly suggests that he knowingly misrepresented himself on that form. The fact that the address information on the 2013 registration was manually entered by someone other than Dark (a civilian employee of the sheriff's department), is irrelevant.

5

As Dark concedes, his "participation in filling out the[] forms could be construed as offering . . . a document to be filed registered or recorded." In sum, the judgment of conviction on the procuring or offering a false or forged instrument charge was supported by substantial evidence that "reasonably inspires confidence" and was of "'solid value.'" (*People v. Bassett* (1968) 69 Cal.2d 122, 139.)

### B. THE CALCRIM NO. 362 INSTRUCTION WAS PROPER

The court instructed the jury with CALCRIM No. 362: "If the defendant made a false or misleading statement before this trial relating to the charged crime, knowing the statement was false or intending to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt. [¶] If you conclude that the defendant made the statement, it is up to you to decide its meaning and importance. However, evidence that the defendant made such a statement cannot prove guilt by itself."[3]

Dark argues that "[g]iving CALCRIM No. 362 was error because there was weak evidentiary support supporting the factual basis for this instruction." In addition, Dark argues that CALCRIM No. 362 violated his due process rights under the California and federal constitutions. We reject both contentions.

### 1. Standard of review

"We review de novo whether a jury instruction correctly states the law. [Citations.] Our task is to determine whether the trial court "'fully and fairly instructed on the applicable law." [Citation.]' [Citation.] When instructions are claimed to be conflicting or ambiguous, 'we inquire whether the jury was "reasonably likely" to have construed them in a manner that violates the defendant's rights.' [Citation.] We look to

---

[3] CALCRIM No. 362 is the successor to CALJIC No. 2.03. Former CALJIC No. 2.03 provided as follows: "'If you find that before this trial [the] defendant made a willfully false or deliberately misleading statement concerning the . . . crimes for which he is now being tried, you may consider that statement as a circumstance tending to prove a consciousness of guilt. However, that conduct is not sufficient by itself to prove guilt, and its weight and significance, if any, are for you to decide.'" (*People v. McGowan* (2008) 160 Cal.App.4th 1099, 1103.)

the instructions as a whole and the entire record of trial, including the arguments of counsel. [Citations.] We assume that the jurors are "'"intelligent persons and capable of understanding *and correlating* all jury instructions . . . given."'" [Citation.] If reasonably possible, we will interpret the instructions to support the judgment rather than to defeat it. [Citation.] Instructional error affects a defendant's substantial rights if the error was prejudicial under the applicable standard for determining harmless error." (*People v. Franco* (2009) 180 Cal.App.4th 713, 720.)

> 2. *The factual basis for the CALCRIM No. 362 instruction was sufficient*

"'False statements regarding incriminating circumstances constitute evidence which may support an inference of consciousness of guilt. [Citations.]'" (*People v. Flores* (2007) 157 Cal.App.4th 216, 221, quoting *People v. Showers* (1968) 68 Cal.2d 639, 643.) The false nature of the defendant's statement may be shown by inconsistencies in the defendant's own testimony, his or her pretrial statements, or by any other prosecution evidence. (*People v. Kimble* (1988) 44 Cal.3d 480, 498.) Accordingly, "[a] trial court properly gives consciousness of guilt instructions where there is some evidence in the record that, if believed by the jury, would sufficiently support the inference suggested in the instructions." (*People v. Bowman* (2011) 202 Cal.App.4th 353, 366.)

Here, there was uncontroverted evidence in the record that in July 2014 Dark made false statements relating to the charged crime and that he did so in order to mislead the investigating authorities into thinking that he still lived at the apartment number 1 address even though he had moved out of that address in June 2011. When McCormick spoke with Dark over the telephone in July 2014, he told her that he was still living at the apartment number 1 address. However, when McCormick told him that she had been unable to find him at that address, Dark admitted that he had, in fact, moved out months earlier.

In light of this evidence, the trial court properly instructed the jury with CALCRIM No. 362. Under the conditional language of CALCRIM No. 362, the jury

would initially have to decide whether Dark's pretrial statement to McCormick was, in fact, false or misleading; if it found the statement was false or misleading, it could then consider whether the statement indicated an awareness of guilt on Dark's part and, in turn, what meaning and weight to ascribe to the statement. Under the circumstances, it was appropriate to permit the jury to make these determinations.

        3.     *The CALCRIM No. 362 instruction did not violate Dark's due process rights*

According to Dark, the CALCRIM No. 362 instruction violated his due process rights because it "allowed the jury to make a permissive inference [that Dark] was guilty of the charged offenses because he had made false statements about the charged crimes."

Dark's contention is without merit for several reasons. First, our Supreme Court has held that CALCRIM No. 362 is a correct statement of the law and does not run afoul of constitutional strictures. (See *People v. Howard* (2008) 42 Cal.4th 1000, 1025 ["We have repeatedly rejected arguments attacking [CALCRIM No. 362]"]; *People v. Nakahara* (2003) 30 Cal.4th 705, 713 [rejecting challenges to CALCRIM No. 362's predecessor, CALJIC No. 2.03].) Our Supreme Court has also held that CALCRIM No. 362 does not permit the jury to draw irrational inferences of guilt where, as here, there is a basis for the jury to make an inference that a defendant made a self-serving statement to protect himself. (See *Howard*, at p. 1025; see also *People v. Alexander* (2010) 49 Cal.4th 846, 922 [noting consistent rejection of arguments that consciousness-of-guilt instructions are improper].)

As for Dark's claim that CALCRIM No. 362 is unconstitutional because it employs the phrase "aware of his guilt" instead of CALJIC No. 2.03's "consciousness of guilt," it is foreclosed by *People v. Hernández Rios* (2007) 151 Cal.App.4th 1154, which found no constitutional infirmity on account of the term "aware of his guilt" in CALCRIM No. 372, a related "flight" instruction. Under *Hernández Rios*, the use of the term "aware of his guilt" in the CALCRIM instructions on false statements, flight, and fabrication of evidence, respectively, is entirely consistent with the use of the term "consciousness of guilt" in the predecessor line of CALJIC instructions on the same

8

topics.  (*Hernández Rios*, at pp. 1158–1159; *People v. McGowan*, *supra*, 160 Cal.App.4th at p. 1103–1104 [no meaningful difference between language in CALCRIM No. 362 and CALJIC No. 2.03].)

Assuming, arguendo, that CALCRIM No. 362 was somehow constitutionally infirm, we would still affirm.  The standard for reversal when instructional error deprives a defendant of his or her federal constitutional rights is harmlessness beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24); the standard for reversal for an instruction that violates or misstates California law is a reasonable probability of a more favorable result (*People v. Watson* (1956) 46 Cal.2d 818, 836).  Here, it is not reasonably probable nor reasonably doubtful that Dark would have obtained a more favorable result under either standard but for the instruction being given.  As the People note, CALCRIM No. 362 had no bearing on the undisputed testimony of Karen Drager, who stated that she, not Dark, had been living at the apartment number 1 address since February 2013. In other words, the jury heard uncontroverted testimony that, during the nine months preceding Dark's affirmation on his November 2013 registration form that he was still living at the apartment number 1 address, someone else, and not Dark, had been living at that address.  As a result, even if CALCRIM No. 362 impermissibly infringed on Dark's due process rights, it was a harmless error to include it among the jury's instructions.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.

9